UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEPHEN THOMPSON, | )  Case No. 5:18CV895 |
| | ) |
| Petitioner, | ) |
| | ) JUDGE PATRICIA GAUGHAN |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) |
| CHRISTOPHER LaROSE, Warden | ) |
| | ) |
| Respondent. | ) REPORT AND RECOMMENDATION |

Petition Stephen Thompson ("Thompson" or "petitioner") has filed a petition for writ of
habeas corpus pursuant to 28 U.S.C. § 2254. The petition is before the magistrate judge pursuant
to Local Rule 72.2(b)(2). Petitioner is in the custody of the Ohio Department of Rehabilitation
and Correction pursuant to journal entry of sentence in the case of *State of Ohio v. Thompson*,
Case No. 13-CR-0137 / 13-CR- 0079 (Wayne County March 17, 2014). (R. 1, PageID #: 1; R. 5-
1, RX 15, RX 27 (resentencing on remand).) Thompson's petition stems from his conviction for
felonious assault and other crimes in the Wayne County (Ohio) Court of Common Pleas. The
respondent has filed a Return of Writ (R. 5) and Thompson has filed a Traverse (R. 10). For the
following reasons, the magistrate judge recommends that the petition be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment
of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. §
2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court
factual findings are presumed correct unless rebutted by clear and convincing evidence.") The

Ninth District Court of Appeals ("state appellate court") summarized the facts underlying

petitioner's conviction as follows:

> Sergeant Chris Conwill of the Wooster Police Department responded to a dispatch indicating that there was a vehicle at a nearby fast food restaurant with a possibly intoxicated driver. Thompson was later identified as the driver of the vehicle. After locating the vehicle identified in the report, Sergeant Conwill followed it as it drove away from the restaurant and observed the vehicle make several traffic infractions. Sergeant Conwill saw the vehicle make an abrupt turn into a private driveway that went through the front yard of a residence. Sergeant Conwill interpreted this abrupt turn as an effort to evade police so he followed the vehicle, parked behind it, and pointed a spotlight at it.

> Sergeant Conwill approached the vehicle, which was still in the driveway, facing the residence, and he observed the person in the front passenger seat vomit outside of the passenger side. Sergeant Conwill positioned himself behind the driver's side of the vehicle and he made eye contact with Thompson as Thompson looked over his shoulder. Around the time of this interaction, Trooper Keith McClintock of the Ohio State Highway Patrol also arrived on the scene, exited his cruiser, and drew his sidearm as the vehicle's passenger door opened.

> After seeing Sergeant Conwill, Thompson revved his vehicle's engine, accelerated, and started to drive further down the driveway towards the residence. He then turned left onto the yard and maneuvered his vehicle around a tree before driving back towards the road as he straddled the driveway and the yard. Thompson was driving towards the road at approximately 20 to 30 miles per hour while fishtailing and heading directly toward Trooper McClintock, who was fearful for his life as he stood in a narrow area between a police cruiser and a nearby embankment. Trooper McClintock subsequently moved left out of the vehicle's path and fired three rounds at it. Thompson then crashed the vehicle into the embankment, got out of the vehicle, and began to flee on foot. Trooper McClintock chased Thompson on foot and eventually tackled him. During the ensuing entanglement, Thompson hit Trooper McClintock in the head with a flashlight before Sergeant Conwill reached their location and used a stun-gun to immobilize Thompson.

> Thompson was arrested and transported to the hospital. After obtaining a warrant, the hospital staff drew blood from Thompson, which revealed a blood alcohol content of .17, over twice the legal limit, and the presence of marijuana. Once his medical treatment was completed, Thompson was escorted to the county jail. After Sheriff Deputy Kirk Shelly instructed Thompson to use the restroom and change, Thompson grabbed the deputy by the throat with such force that he drew blood and tore skin from the deputy's neck.

The Grand Jury indicted Thompson on the following: (1) two counts of felonious assault on a peace officer in violation of R.C. 2903.11(A)(2), a felony of the first degree; (2) two counts of assault on a peace officer in violation of R.C. 2903.13(A), a felony of the fourth degree; (3) one count of obstructing official business in violation of R.C. 2921.31(A), a felony of the fifth degree; (4) one count of OVI in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree; and (5) one count of OVI in violation of R.C. 4511.19(A)(1)(c), a misdemeanor of the first degree.

The matter proceeded to a jury trial during which the trial court allowed the State to amend the indictment to include an allegation that the offenses occurred in Wayne County. The trial court also granted Thompson's Crim.R. 29 motion for acquittal on one of the felonious assault counts. The jury found Thompson guilty on the remaining counts.

(R. 5-1, RX 22; *State v. Thompson*, No. 15AP0016, 2016 WL 3570469, at *1-*2 (Ohio Ct. App. June 30, 2016).)

On direct appeal, Thompson raised seven assignments of error:

1.  The jury was denied expert testimony regarding the defendant's reaction time and expert testimony regarding the position of Trooper McClintock; as a result, the jury was deprived of evidence relevant to the issue of the defendant's intent as well as the credibility of various prosecution witnesses.

2.  The trial court erroneously failed to instruct the jury that, in order to find the defendant guilty of the peace officer specifications alleged in Counts 1, 3, and 7, the jury was required to find that the victim was acting in the line of duty at the time of the assault.

3.  The jury verdicts reflect a second-degree felony in Count 1 and first degree misdemeanors in Count 3 and 7.

4.  The trial court erred in amending the indictment to include the allegation that the offenses were committed in Wayne County.

5.  Stephen Thompson's conviction for felonious [assault] of Trooper McClintock in Count 1 is not supported by legally sufficient evidence as required by state and federal due process.

6.  The trial court abused its discretion and violated Stephen Thompson's due process rights and right to an impartial jury by imposing an arbitrary time limit on voir dire, and failing to excuse Juror 22.

      7.  The trial court failed to make the necessary statutory findings to support the imposition of consecutive sentences.

(R. 5-1, RX 19, PageID #: 118-119.) On June 30, 2016, the court of appeals affirmed the criminal convictions, but sustained the seventh assignment of error. (R. 5-1, RX 22, PageID #: 220-223; *Thompson*, 2016 WL 3570469, at *10-*12.) The judgment of sentencing was reversed and remanded, insofar as the court found that the judgment of consecutive sentences was not supported by sufficient findings under Ohio Rev. Code § 2929.14(C)(4). (R. 5-1, RX 22, PageID #: 223; *Thompson*, 2016 WL 3570469, at *11.) On remand, Thompson was resentenced on February 28, 2018. (R. 5-1, RX 27.)

      Thompson appealed his convictions to the Supreme Court of Ohio, raising the following four propositions of law:

      1.  The physical ability of a motorist to perceive and react while driving is properly the subject of expert testimony.

      2.  A criminal defendant is denied his constitutional right to present a full defense when the trial court completely bars the defense expert from testifying on the basis that a small portion of the expert report is inadmissible.

      3.  To obtain a conviction for felonious assault based upon a vehicle's near collision with the alleged victim, the State must prove, beyond a reasonable doubt, that the driver was able to perceive the alleged victim and had adequate time to react and avoid that individual.

      4.  *Pelfrey* errors are not subject to plain error analysis.[1]

---

[1]  In *Pelfrey*, the Supreme Court of Ohio had ruled: "Pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense."  *State v. Pelfrey*, 112 Ohio St. 3d 422, 423, 860 N.E.2d 735, 736 (2007) (syllabus).

(R. 5-1, RX 24, PageID #: 228.) On February 22, 2017, the Supreme Court of Ohio declined

jurisdiction of his appeal. (R. 5-1, RX 26; *State v. Thompson*, 148 Ohio St.3d 1410, 69 N.E.3d

750 (2017).)

On April 19, 2018, Thompson filed a petition for a writ of habeas corpus in this court,

alleging three grounds for relief:

> 1.  Stephen Thompson was denied his right to present a complete defense when
> the trial court excluded all of his experts and their testimony in violation of the
> Sixth and Fourteenth Amendments of the federal Constitution.
>
> 2.  The evidence is insufficient under the Fourteenth Amendment to sustain a
> conviction for Felonious Assault on Trooper McClintock under Jackson v.
> Virginia, 443 U.S. 307 (1979).
>
> 3.  AEDPA violates the federal Constitution and this Petition must be decided
> without its application.

(R. 1, PageID #: 20, 22, 23.)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must

apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal

courts have limited power to issue a writ of habeas corpus with respect to any claim which was

adjudicated on the merits by a state court. The Supreme Court, in *Williams v. Taylor*, provided

the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied -- the state-court adjudication resulted in a decision that (1)
> "was contrary to ... clearly established Federal law, as determined by the Supreme
> Court of the United States," or (2) "involved an unreasonable application of ...
> clearly established Federal law, as determined by the Supreme Court of the
> United States." Under the "contrary to" clause, a federal habeas court may grant
> the writ if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently than this
> Court has on a set of materially indistinguishable facts. Under the "unreasonable

5

application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-413 (2002). *See also Lorraine v. Coyle*, 291 F.3d 416, 421-422 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. *See also Price v. Vincent*, 538 U.S. 634, 640 (2003). A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Williams*, 529 U.S. at 410-12; *Lorraine*, 291 F.3d at 422.

### III.  LEGAL ANALYSIS

### A.  CONSTITUTIONALITY OF THE AEDPA

Thompson's third ground for relief argues that the AEDPA violates the U.S. Constitution and it should not apply to his petition. (R. 1, PageID #: 23.) The court necessarily addresses this argument first, as it affects the proper standard of review.

Duly enacted congressional statutes are entitled to a presumption of constitutionality. *United States v. Napier*, 233 F.3d 394, 399 (6th Cir. 2000); *United States v. Scrushy*, No. CR-03-BE-0530-S, 2004 WL 2713262, at *2 (N.D. Ala. Nov. 23, 2004).  A congressional enactment will be invalidated only upon a plain showing that Congress has exceeded its constitutional bounds. *Napier*, 233 F.3d at 399 (quoting *United States v. Morrison*, 529 U.S. 598 (2000)).

In support of his argument that the AEDPA unconstitutionally restricts the court's ability to remedy alleged constitutional violations, Thompson cites three cases. (R. 1, PageID #: 23.)

6

The first citation is to a dissenting opinion in a First Circuit case, *Evans v. Thompson*, 534 F.3d 1 (1st Cir. 2008) (Lipez, J., dissenting), which dissented from the court's denial of en banc review. Although such a dissenting decision may have instructive value, the majority decision upholding the application of the AEDPA certainly has more precedential value because dissenting opinions are not binding authority on any court. In addition, decisions from a sister circuit may be instructive persuasive authority, but they are not binding authority on courts in the Sixth Circuit. *See generally McDermott v. Kerns*, No. 3:07CV901, 2008 WL 2600008, at *2 (N.D. Ohio June 26, 2008) (district court is bound by relevant Sixth Circuit precedent, citing *Timmreck v. United States*, 577 F.2d 372, 373 n. 6 (6th Cir. 1978), *overruled on other grounds by United States v. Timmreck*, 441 U.S. 780 (1979)); *Bennett v. E.F. Hutton Co.*, 597 F. Supp. 1547, 1557 (N.D. Ohio 1984); *In re Brown*, 536 F. Supp. 750, 751 (N.D. Ohio 1982).

The second and third citations are to dissenting opinions in the *Davis v. Straub* case. In neither case did the Sixth Circuit hold the AEDPA to be unconstitutional. In the first *Davis* case, the dissent argued that the majority opinion was overly deferential to the state court's findings. *Davis v. Straub*, 430 F.3d 281, 295-298 (6th Cir. 2005), *cert. denied,* 549 U.S. 1110 (2007) ("*Davis I*") (Merritt, J., dissenting). Rather than asserting that the statute was unconstitutional *per se*, the dissent argued: "The majority's narrow view of § 2254(d)(1) unconstitutionally obstructs Article III's mandate to exercise the judicial power in cases over which the court has jurisdiction." *Id.* at 296. The dissent viewed the majority's reading of the statute as resulting in an "undue deference to state court judgments," *id.* at 297-298, and asserted that such undue deference "would render § 2254(d)(1) unconstitutional," *id.* at 298. The dissent's argument, then, was not that the AEDPA was necessarily unconstitutional, but rather the majority's reading of the statute was improper.

7

Thompson also relies on a dissenting opinion in the second *Davis* case, which raised similar concerns. *See Davis v. Straub*, 445 F.3d 908 (6th Cir. 2006) (Martin, J., dissenting) (denial of rehearing en banc). The dissent expressed the opinion that recent Sixth Circuit opinions had "adopted an overly narrow interpretation of the 'unreasonable application' prong of the AEDPA's Section 2254(d)(1)." *Id.* at 908. The dissent argued that the panel decision in *Davis I* was "a prime example of the result of such an overly narrow reading of AEDPA." *Id.* The dissent contended that the court's "narrow reading of the unreasonable application prong offends the judicial power under Article III." *Id.* at 910. However, the dissent did not argue that the statute was unconstitutional *per se*, but rather stated, "a proper and constitutional interpretation of Section 2254(d)(1) would require the writ to issue" in the case before the court.  *Id.* at 912. The dissent's argument, again, was not that the AEDPA was unconstitutional, but rather that the panel's decision was improper.

Thompson has failed to overcome the presumption of the AEDPA's constitutionality. *See generally Napier*, 233 F.3d at 399*; Scrushy*, 2004 WL 2713262, at *2. He has not presented any United States Supreme Court or Sixth Circuit authority supporting "a plain showing that Congress has exceeded its constitutional bounds," *Napier*, 233 F.3d at 399 (quoting *Morrison*, 529 U.S. 598), nor has he pointed to any binding authority finding the statute to be unconstitutional.  The third ground of the petition is without merit. The court finds that this case is properly governed by the AEDPA, 28 U.S.C. § 2254, and will apply its standard of review. *See supra*.

**B. SUFFICIENCY OF THE EVIDENCE**

The Sixth Circuit has stated that a sufficiency of evidence argument should be the first issue ruled upon in a habeas petition. *Russell v. Anderson*, No. 1:07CV3434, 2008 WL 4534144,

at *3 (N.D. Ohio Oct. 6, 2008) (citing *Joseph v. Coyle*, 469 F.3d 441, 453-454 (6th Cir. 2006).

In this case, it was necessary to address the question of the relevant standard of review first.

Having resolved that issue, the court moves to the sufficiency claim.

The second ground of the petition is that "[t]he evidence is insufficient under the

Fourteenth Amendment to sustain a conviction for Felonious Assault on Trooper McClintock

under *Jackson v. Virginia*, 443 U.S. 307 (1979)." (R. 1, PageID #: 22.) Thompson contends that

there was insufficient evidence presented that Thompson knowingly attempted to cause harm to

Trooper McClintock by attempting to hit McClintock with the car Thompson was driving. *Id.*

The state court of appeals addressed this contention as follows:

> A sufficiency challenge to a criminal conviction presents a question of law that
> we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541
> (1997). In carrying out this review, our "function * * * is to examine the evidence
> admitted at trial to determine whether such evidence, if believed, would convince
> the average mind of the defendant's guilt beyond a reasonable doubt." *State v.
> Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.
> After such an examination and taking the evidence in the light most favorable to
> the prosecution, we must decide whether "any rational trier of fact could have
> found the essential elements of the crime proven beyond a reasonable doubt." *Id.*
> Although we conduct de novo review when considering a sufficiency challenge,
> "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as
> both are functions reserved for the trier of fact." (Internal quotation and citation
> omitted.) *State v. McMillen*, 9th Dist. Summit No. 27666, 2016-Ohio-370, ¶ 5.

> The first basis[2] of Thompson's sufficiency challenge is that the State failed to
> offer sufficient evidence that he was aware that his conduct of driving head-on
> towards Trooper McClintock would probably result in an attempt to cause
> physical harm to Trooper McClintock. This argument implicates the statutory
> definitions for "knowingly" and "attempt." "A person acts knowingly, regardless
> of purpose, when he is aware that his conduct will probably cause a certain result
> or will probably be of a certain nature." Former R.C. 2901.22(B).4 R.C.
> 2923.02(A), meanwhile, relevantly defines "attempt" as "[n]o person, * * *
> knowingly, and when * * * knowledge is sufficient culpability for the commission

---

[2]  The second basis of Thompson's state-court challenge to the sufficiency of the evidence
concerned the deadly weapon element of the statute (R. 5-1, RX 19, PageID #: 144; RX 22,
PageID #: 218-220; *Thompson*, 2016 WL 3570469, at *10), which he does not press in his
habeas petition.

of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

After reviewing the record, we conclude that it contains sufficient evidence to establish that Thompson was aware his conduct could result in physical harm to Trooper McClintock. Although there is no evidence that Trooper McClintock spoke with Thompson before he drove the vehicle toward him, there is an indication that Thompson made eye contact with Sergeant Conwill before driving towards the two sets of headlights behind his vehicle in the driveway. Based on this, it is reasonable to infer that Thompson was aware of the presence of at least two officers as he drove away from the residence toward the road. Additionally, both Sergeant Conwill and Trooper McClintock testified that Thompson's vehicle drove directly toward Trooper McClintock while its headlights were on. This, along with evidence demonstrating that Thompson was able to maneuver his vehicle around the driveway and yard, indicates that Thompson was able to see the trooper as he accelerated and drove toward him. From these items of evidence, we determine that the State offered sufficient evidence to establish the required mental state of "knowingly." *See State v. Cash*, 6th Dist. Lucas No. L-03-1198, 2005-Ohio-1382, ¶ 7 (rejecting sufficiency challenge to felonious assault of a peace officer conviction where officers believed the vehicle was attempting to hit them and collision was only avoided because the officers took evasive action).

(R. 5-1, RX 22, PageID #: 218-219; *Thompson*, 2016 WL 3570469, at *9.)

The state court appeared to rely on state law, rather than federal law, in addressing the sufficiency of the evidence claim. The standard set forth in *State v. Jenks*, 61 Ohio St. 3d 259, 259-260, 574 N.E.2d 492, 494 (1991), cited by the state appellate court, incorporated the relevant standard from *Jackson v. Virginia*, 443 U.S. 307 (1979). Because the state appellate court applied the above-referenced standard (R. 5-1, RX 22, PageID #: 218; *Thompson*, 2016 WL 3570469, at *9), it identified the correct governing legal principle as set forth in *Jackson v. Virginia*.

The question for this court, then, is whether the state court decision involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. Under the "unreasonable application" clause, this court may grant the writ if the state court identified the correct governing legal principle from Supreme Court decisions but

10

unreasonably applied that principle to the facts of Thompson's case. In addition, a sufficiency of the evidence claim is reviewed under Supreme Court precedent by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *see also Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (per curiam); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir.) (en banc), *cert. denied*, 496 U.S. 929 (1990).

Under *Jackson*, the habeas court does not make its own subjective determination of guilt or innocence. *Russell*, 2008 WL 4534144, at *3 (citing *Herrera v. Collins,* 506 U.S. 390, 402 (1993)); *Talley v. Hageman*, 619 F.Supp.2d 407, 416 (N.D. Ohio 2008) (citing *Herrera*). This court does not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury. *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009), *cert. denied*, 562 U.S. 858 (2010) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)); *Dover v. Warden, Belmont Corr. Inst.*, No. 5:08CV2130, 2009 WL 1940728, at *14 (N.D. Ohio July 2, 2009).

The Supreme Court has emphasized that "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos*, 565 U.S. at 2. The Court stressed that *Jackson* "unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 7 (quoting *Jackson*, 443 U.S. at 326). "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (quoting *Cavazos*).

11

On habeas review, "the *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc), *cert. denied*, 566 U.S. 947 (2012) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). The Supreme Court has affirmed that "*Jackson* claims face a high bar in federal habeas proceedings." *Coleman*, 566 U.S. at 651. A federal habeas court may overturn the state court's sufficiency of the evidence decision "only if the state court decision was 'objectively unreasonable.'" *Id.* (citing *Cavazos*, 565 U.S. at 4). The Sixth Circuit has noted that the precise definition of "objectively unreasonable" in this context "remains elusive." *Davis*, 658 F.3d at 534. The court determined that a habeas court is "limited to reviewing whether the state trial court's decision was so objectively unreasonable as to be 'beyond error,' or 'outside the boundaries of permissible differences of opinion,' or more than 'clearly wrong,'" to warrant granting the petitioner habeas relief. *Id.* at 535-536 (internal citations omitted).

Reviewing the arguments of the parties and the state court's determination on this matter, this court cannot find that the state court decision is an objectively unreasonable application of federal law. The court cannot find that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Coleman v. Johnson*, 566 U.S. at 651; *Jackson*, 443 U.S. at 319. Thompson has failed to demonstrate that the state court determination resulted in a decision that involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

The petition should not be granted on the basis of the second ground.

## C.  RULINGS ON EXPERT WITNESSES

The first ground of the petition asserts that the petitioner "was denied his right to present a complete defense when the trial court excluded all of his experts and their testimony in violation of the Sixth and Fourteenth Amendments of the federal Constitution." (R. 1, PageID #: 20.) On direct appeal, Thompson framed this first assignment of error as:

> The jury was denied expert testimony regarding the defendant's reaction time and expert testimony regarding the position of Trooper McClintock; as a result, the jury was deprived of evidence relevant to the issue of the defendant's intent as well as the credibility of various prosecution witnesses.

(R. 5-1, RX 19, PageID #: 118, 132.) Thompson argued that the trial court abused its discretion in its evidentiary rulings, which he characterizes as unreasonable, arbitrary or unconscionable. *Id.* at 132 (citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).) He also states: "It is axiomatic that a defendant has a right to present evidence in his own behalf. U.S. Const. Amends. VI, XIV; Ohio Const. Art. I, Sec. 10." *Id.* Although Thompson included that reference to the Sixth and Fourteenth Amendments, he did not raise any federal constitutional arguments concerning this claim in his operative appellate brief. *See generally* R. 5-1, RX 19, PageID #: 132-136.

The state appellate court ruled on Thompson's claim as follows:

> In his first assignment of error, Thompson contends that the trial court abused its discretion by precluding the defense from offering expert testimony regarding the police's actions during the incident and his ability to see Trooper McClintock when driving towards him. We disagree.

> Thompson attempted to call three expert witnesses in his defense: Thomas Tomasheski, Choya Hawn, and Henry Lipian. He argues that these expert witnesses' expected testimony would have created a reasonable doubt in regard to his felonious assault conviction for driving his vehicle towards Trooper McClintock. The trial court excluded Mr. Tomasheski's testimony as irrelevant and it excluded Mr. Lipian's and Mr. Hawn's testimony under Evid.R. 403(A). Accordingly, we consider the trial court's exclusion of Mr. Tomasheski's

13

testimony separately from the exclusion of Mr. Hawn's and Mr. Lipian's testimony.

### A.  Mr. Tomasheski's Testimony

Evid.R. 402 limits the admission of evidence to relevant evidence. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Trial courts are "'vested with broad discretion'" in regard to the admission or exclusion of evidence, and "'an appellate court should not interfere [with the trial court's evidentiary ruling] absent a clear abuse of that discretion.'" *State v. Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216, 2002-Ohio-2126, ¶ 40, quoting *State v. Allen*, 73 Ohio St.3d 626, 633, 653 N.E.2d 675 (1995). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore [v. Blakemore]*, 5 Ohio St.3d [217,] 219, 450 N.E.2d 1140 (1983). We may not substitute our own judgment for that of the trial court when applying the abuse of discretion standard. *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

Here, Mr. Tomasheski's expert report essentially criticizes the handling of the incident by Sergeant Conwill and the various law enforcement agencies that responded to the scene. Mr. Tomasheski opines that Sergeant Conwill violated protocol by failing to stop Thompson's vehicle in the fast food restaurant's parking lot and by arranging for Trooper McClintock to get involved. Mr. Tomasheski also opines that "what I see in this investigation makes me sad" because the responding agencies disputed which agency was the proper one to handle the investigation.

After reviewing Mr. Tomasheski's opinions and his report, we conclude that the trial court did not abuse its discretion by precluding Mr. Tomasheski from testifying. The report indicates that Mr. Tomasheski's testimony would have been irrelevant in regard to Thompson's felonious assault conviction. Sergeant Conwill's failure to stop Thompson's vehicle in the restaurant's parking lot and his decision to involve Trooper McClintock in the traffic stop does not implicate whether Thompson knowingly drove his vehicle towards Trooper McClintock. *See State v. Belcher*, 2d Dist. Montgomery No. 24968, 2013-Ohio-1234, ¶ 32 (determining that assault victims' failure to follow the controlling policies of their employers were irrelevant to the defendant's guilt and inadmissible). The responding agencies' subsequent dispute over the proper authority for the investigation is also irrelevant as it does nothing to illuminate whether Thompson's action of driving towards Trooper McClintock was more probable or less probable. *See State v. McCray*, 103 Ohio App.3d 109, 118, 658 N.E.2d 1076 (9th Dist. 1995) (determining that expert testimony regarding the defendant's posttraumatic stress disorder after observing murder was properly excluded since the evidence "would not offer a defense, justification or excuse" of the

defendant's conduct). Consequently, we are unable to determine that the trial court erred by excluding Mr. Tomasheski's expert testimony.

    B.  Mr. Hawn's and Mr. Lipian's Testimony

Turning to Mr. Hawn's and Mr. Lipian's testimony, we note that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, or confusion of the issues, or of misleading the jury." Evid.R. 403(A). We review the trial court's exclusion of this testimony under Evid.R. 403(A) for an abuse of discretion. *State v. Norris*, 9th Dist. Lorain No. 14CA010699, 2015-Ohio-5180, ¶ 20. In conducting our review of this decision, we are mindful that "the exclusion of evidence under Evid.R. 403(A) is even more of a judgment call than determining whether the evidence has logical relevance in the first place." *Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216, 2002-Ohio-2126, at ¶ 40.

Mr. Hawn's expert report relates to the trajectory of the bullets fired by Trooper McClintock. While the trajectory of the bullets may have some probative value regarding Trooper McClintock's position when he fired the bullets, Mr. Hawn's report focuses on Trooper McClintock's reactions as opposed to Thompson's actions, which were the exclusive focus of the indictment. As a result, Mr. Hawn's testimony would have confused the jurors in regard to the proper focus of this criminal matter, which was whether Thompson knowingly caused or attempted to cause physical harm to Trooper McClintock. See State v. Rodriguez, 12th Dist. Butler No. CA2007-09-222, 2009-Ohio-549, ¶ 34 (determining that the trial court properly excluded revised domestic relations forms in perjury trial because the forms did not address "the central issue in the case[, which] involved [the defendant]'s understanding of the forms she completed and whether she knowingly made false statements on such documents"). Consequently, we determine that the trial court did not abuse its discretion by excluding Mr. Hawn's expert testimony.

We likewise conclude that the trial court did not abuse its discretion by excluding Mr. Lipian's testimony under Evid.R. 403(A). Mr. Lipian's expert report states his opinion that Thompson was unable to detect Trooper McClintock during the incident and that he could not make an "intentional decision" to drive towards Trooper McClintock. Mr. Lipian's opinion was partly based on evidence that Thompson was voluntarily intoxicated at the time of the incident. By couching his opinion in terms of Thompson's inability to make an "intentional decision," Mr. Lipian plainly used Thompson's voluntary intoxication as means to disprove that Thompson "knowingly" drove toward Trooper McClintock.

But, evidence of voluntary intoxication cannot be used in such a way as former R.C. 2901.21(C) provides that "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense." *See also State v. Mitchell*, 8th Dist. Cuyahoga No. 102499,

15

2015-Ohio-4379, ¶ 19 ("Voluntary intoxication does not negate the 'knowing' state of mind required for a conviction of assault."). Allowing Mr. Lipian to testify regarding voluntary intoxication would confuse the jurors regarding the availability of this defense and it would unfairly prejudice the State since it would allow the impermissible defense to be presented to the jury. *See State v. Rupp*, 12th Dist. Butler No. CA2001-06-135, 2002 WL 517968, *6 (Apr. 8, 2002) (determining that the defendant's failure to comply with the order of a police officer was not against manifest weight of the evidence since the trial court could not consider evidence that the defendant was unable to "willfully elude" the police officer due to his voluntary intoxication). As a result, the trial court properly precluded Mr. Lipian from testifying due to "the danger of unfair prejudice, or confusion of the issues, or of misleading the jury." Evid.R. 403(A).

In sum, the trial court did not abuse its discretion by precluding the testimony of Mr. Tomasheski, Mr. Hawn, and Mr. Lipian. Accordingly, we overrule Thompson's first assignment of error.

(R. 5-1, RX 22, PageID #: 210-214; *Thompson*, 2016 WL 3570469, at *4-*7 (footnotes omitted).)

The state court of appeals reviewed Thompson's claim(s) under an abuse of discretion standard, which was how he framed his argument in his appellate brief. *See generally* R. 5-1, RX 19, PageID #: 132. Moreover, the state court grounded its rulings upon Ohio law. (R. 5-1, RX 22, PageID #: 210-214; *Thompson*, 2016 WL 3570469, at *4-*7; *see also* R. 1, PageID #: 20.)

The respondent argues that Thompson failed to fairly present his claim to the state courts as a federal constitutional claim. (R. 5, PageID #: 41-46.) This court does not have jurisdiction to consider a federal claim in a habeas petition that was not fairly presented to the state courts.

*Baldwin v. Reese*, 541 U.S. 27 (2004); *Jacobs*, 265 F.3d at 415. The Sixth Circuit has stated:

A claim may only be considered "fairly presented" if the petitioner asserted both the factual and legal basis for his claim to the state courts. This court has noted four actions a defendant can take which are significant to the determination whether a claim has been "fairly presented": (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied*, 532 U.S. 958 (2001) (citing *Franklin v. Rose*, 811 F.2d 322, 325-326 (6th Cir. 1987)); *see also  Hicks v. Straub*, 377 F.3d 538, 552-554 (6th Cir. 2004), *cert. denied*, 544 U.S. 928 (2005). To "fairly present" the claim to the state courts, a habeas petitioner must present his claim as a federal constitutional issue, not as an issue arising solely under state law. *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

Thompson based his argument before the state appellate court entirely on state law, although his appellate brief contains one citation to the Sixth and Fourteenth Amendments. (R. 5-1, RX 19, PageID #: 132.) His state court of appeals reply brief also referenced a denial of "his right to present a full defense," alleging in one sentence that it "violated his due process and confrontation rights under the state and federal constitution." (R. 5-1, RX 21, PageID #: 193-194, citing *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).). The reply brief's single, general allegation to a due process violation regarding his "right to present a full defense" was not sufficiently particular to fairly present a federal claim that specific constitutional rights were violated. *See, e.g.*, *Olson v. Little*, 604 Fed. Appx 387, 401-402 (6th Cir. 2015), *cert. denied*, 136 S.Ct. 551 (2015) (citing *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004); *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006), *cert. denied, 551 U.S. 1103 (2007)* (citing *Blackmon*). None of the above-referenced *McMeans* elements are satisfied and the court cannot conclude that Thompson fairly presented such a federal due process claim to the state appellate court. *See generally* R. 5-1, RX 19, PageID #: 132-136. But even if the court determined that petitioner had fairly presented such a federal claim to the state courts, the claim would fail on the merits.

The Supreme Court has stated that "[t]he Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several

provisions of the Sixth Amendment." *Crane*, 476 U.S. at 690 (quoting *Strickland v. Washington*, 466 U.S. 668, 684-685 (1984)). "A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). The Court has recognized that states "have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes*, 547 U.S. at 324 (citing *Scheffer*, 523 U.S. at 308).

The "clearly established rule" is that alleged errors of state law, "especially rulings regarding the admission or exclusion of evidence," are not generally within the purview of a federal habeas court. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also Estelle v. McGuire*, 502 U.S. 62, 68-70 (1991); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.), *cert. denied*, 540 U.S. 930 (2003); *Gott v. Coleman*, No. 3:15CV1148, 2016 WL 11384508, at *6 (N.D. Ohio July 21, 2016), *adopted by*, 2016 WL 6080161 (N.D. Ohio Oct. 18, 2016). This court must presume that the Ohio state courts correctly interpreted Ohio evidence law in their evidentiary rulings. *Small v. Brigano,* No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005).

In addition, alleged state court evidentiary ruling errors do not rise to the level of constitutional claims warranting habeas relief "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *Broom v. Mitchell*, 441 F.3d 392, 406 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007). *See also Bugh*, 329 F.3d at 512; *Farraj v. Wolfenbarger*, No. 10-13627, 2014 WL 1091752, at *10 (E.D. Mich. Mar.  18, 2014). Courts have defined the category of errors that are fundamentally unfair very narrowly. *Bugh*, 329 F.3d at 512. "State-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice

18

so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"

*Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000), *cert. denied,* 532 U.S. 989 (2001)

(quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)); *see also Majid v. Noble*, 751 Fed. Appx

735, 747 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1360 (2019); *Broom*, 441 F.3d at 406 (quoting

*Seymour*).

Thompson does not explicitly contend that the state court evidentiary rulings were so

fundamentally unfair as to deprive him of due process. *See generally* R. 1, PageID #: 20-21. He

argues, however, that he was not provided an opportunity to provide a complete defense. *Id.* at

20, citing *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Crane v. Kentucky*, 476 U.S. 683

(1986); *Holmes v. South Carolina*, 547 U.S. 319 (2006); and *Mathews v. United States*, 485 U.S.

[58,] 63 (1988). The cases petitioner relies upon, however, do not establish that evidentiary

rulings limiting expert witness testimony are so fundamentally unfair as to deprive him of due

process.

In particular, the case law petitioner cites does not support an argument that a

defendant—in order to provide a complete defense under the United States Constitution—must

be permitted to present expert testimony that a trial court has ruled inadmissible under state law.

In *Trombetta*, the Court held that "the Due Process Clause of the Fourteenth Amendment does

not require that law enforcement agencies preserve breath samples in order to introduce the

results of breath-analysis tests at trial." *Trombetta*, 467 U.S. at 491. In *Crane*, the Court held that

a state is not permitted to exclude competent, reliable evidence bearing on the circumstances and

credibility of a confession when such evidence is central to the defendant's claim of innocence.

*Crane*, 476 U.S. at 690. In *Mathews*, the Court held that "even if the defendant denies one or

more elements of the crime, he is entitled to an entrapment instruction whenever there is

19

sufficient evidence from which a reasonable jury could find entrapment." *Mathews*, 485 U.S. at 62. In *Holmes*, the Court found that "a criminal defendant's federal constitutional rights are violated by an evidence rule under which the defendant may not introduce proof of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict." *Holmes*, 547 U.S. at 321, 327-331. None of these cases are on point.

Thompson's Traverse cites several federal appellate decisions in support of his argument that the writ should be granted on the basis of the exclusion of the expert witnesses. (R. 10, PageID #: 924, citing *Forensic v. Birkett*, 501 F.3d 469 (6th Cir. 2007), and other cases.) The Sixth Circuit in *Forensic* asserted that "[t]he right of an accused to present a defense in a criminal trial derives from the Compulsory Process Clause of the Sixth Amendment to the U.S. Constitution, and 'stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the States.'" *Forensic*, 501 F.3d at 475 (quoting *Taylor v. Illinois*, 484 U.S. 400, 409 (1988)). The Sixth Circuit ruled in that case that the trial court's exclusion of two defense witnesses denied the defendant his Sixth Amendment right to present a defense.[3] *Forensic*, 501 F.3d at 480. The court found that the exclusion of evidence in a criminal trial abridges an accused's right to present a defense where the exclusion is arbitrary or disproportionate to the purpose it is designed to serve. *Forensic*, 501 F.3d at 475 (quoting *Scheffer*, 523 U.S. at 308).

---

[3]  The trial court barred an expert on the reliability of eyewitness testimony from testifying because the defense failed to meet a pretrial deadline for the exchange of expert reports. *Forensic*, 501 F.3d at 471. The Sixth Circuit stated that "a less severe sanction was appropriate or, at the very least, should have been considered by the trial judge." *Id.* at 478. The second defense witness at issue was not present in the courtroom when the court was ready to move to that testimony, and the court denied defendant's motion for a brief adjournment to allow for his arrival. *Id.* at 479-480.

The Supreme Court has repeatedly stated that the AEDPA prohibits federal habeas courts from relying on precedent from the federal courts of appeals to conclude that a particular constitutional principle is "clearly established." *See, e.g.*, *Lopez v. Smith*, 135 S.Ct. 1, 2 (2014) (per curiam). The petitioner must demonstrate Supreme Court case law that clearly establishes the legal proposition needed to grant habeas relief. *Lopez*, 135 S.Ct. at 4; *see also Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (indicating that no Supreme Court case addresses "the specific question presented by this case"). Thompson, however, has not cited Supreme Court precedent—the only source of clearly established federal law for habeas purposes—supporting his argument that a defendant must be permitted to present expert testimony that a trial court has ruled inadmissible under state law.

The cases cited by Thompson do not support a finding that this is the exceptional case where the state court evidentiary rulings at issue were so fundamentally unfair as to deprive him of due process. *See generally Majid*, 751 Fed. Appx at 747 (habeas relief almost never granted based on state court evidentiary decisions). Because Thompson has not shown that the state court decision was contrary to clearly established federal law as determined by the Supreme Court of the United States, the petitioner's first ground for relief lacks merit.

## IV.  CONCLUSION

The undersigned recommends that the petition be denied, for the reasons set forth above.


s/ David A. Ruiz
David A. Ruiz
Date:  September 18, 2019                    United States Magistrate Judge

21

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of

Courts within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72(a); LR 72.3(a).

Failure to file objections within the specified time WAIVES the right to appeal the Magistrate

Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v.*

*Walter*s, 638 F.2d 947 (6th Cir. 1981).